C. F. WOODS v. CLEMENS WULF and Others.[1]

November 1, 1901.

Nos. 12,839—(30).

## Verdict Sustained by Evidence.

*Held*, in this case, that the evidence was manifestly, palpably, and completely in favor of the verdict rendered by the jury, and that the trial court erred in setting it aside and ordering a new trial.

Action in the district court for Big Stone county to recover $750 damages for severing and removing certain buildings from plaintiff's land. The case was tried before Steidl, J., and a jury,

[1] Reported in 87 N. W. 840.

which rendered a verdict in favor of plaintiff for one hundred twenty-five dollars. From an order granting a motion for a new trial, plaintiff appealed. Reversed.

*E. T. Young*, for appellant.

*Aaron B. Kaercher*, for respondents.

COLLINS, J.

From an order granting defendants' motion for a new trial, plaintiff appealed. A majority of the court are of the opinion that the order should be reversed, and this renders it necessary to quite fully state the facts.

Plaintiff was the owner of forty acres of land in a certain one hundred sixty-acre tract. Defendant Wulf had a written contract with the owner, Michel, for the purchase of the balance of the one hundred sixty and eighty adjoining, in all two hundred acres, the stipulated price being a little over eleven dollars an acre. Upon this contract he had paid something more than two hundred dollars. There were no buildings thereon, but Wulf had bargained for an old school house and two small granaries, which he intended to move thereto. He was indebted to plaintiff on account of agricultural machinery, binding twine, borrowed money, and otherwise in a sum exceeding three hundred dollars. He was also indebted to Michel, in addition to the amount due upon the land, a little over fifty dollars.

Plaintiff and Wulf entered into negotiations for the transfer and sale of Wulf's contract rights in the two hundred acres, and it was finally verbally agreed that plaintiff and one Richardson should buy him out at fourteen dollars an acre, including the buildings before mentioned, Wulf to move them onto the two hundred acre tract in accordance with his original intention. There was no real dispute at the trial as to this agreement. In payment plaintiff and Richardson were to assume and pay Wulf's indebtedness on the land, were to pay his additional debt to Michel of about fifty dollars, were to turn over and release the evidences of Wulf's indebtedness held by plaintiff, and were to pay 1899 taxes on the land. This would leave a balance due to Wulf of nearly three hundred dollars, of which two hundred dollars was to be paid by

Woods' note. Wulf then executed and delivered to the plaintiff the following receipt:

"Correll, Sept. 14, 1899.

"Rec'd of C. F. Woods forty-one dollars in payment on N. E. ¼ of Sec. 23, 121, 44, and N. E. ¼ of S. E. ¼ one ¼ of Sec. 23—121—44, at fourteen dollars per acre, said Woods to assume contract to J. Michel of a bal. of $2,200, and int. at 7 per cent. from Oct. 1st. Said Wulf to move school house and move two granaries bought of Heineche, and pay tax for 1899, and to assign contract to Woods, and take Woods' note, due Oct. 1st, 1900, for $200.00, at 7 per cent. Said Woods pays bal.       CLEMENS WULF."

The forty-one dollars mentioned in this receipt was the amount of a note held by plaintiff against Wulf, given for binding twine, and then surrendered and delivered up by the former.

There was no allegation in the answer, and no attempt to prove at the trial, that this receipt was obtained by fraud, or false representations, or that the transaction was not open and fair up to this time. It is to be noticed that the tract of land on which the buildings were to be moved was not designated in this receipt, and also that it was expressly stipulated therein that Wulf was to accept Woods' note for two hundred dollars, bearing interest at seven per cent., payable about one year later; Woods to pay the balance. The next day Wulf assigned all of his right and interest in the Michel contract to plaintiff and Richardson, the assignment being in writing upon the contract itself, the same being executed by Wulf in plaintiff's office in the village of Correll, a few miles distant from where Wulf then resided, with a brother-in-law, not far from the land in question. Plaintiff and Richardson had previously driven out to Wulf's house, and had examined this contract; and on the day it was assigned his wife delivered it to plaintiff at their house, with the understanding, she testified, that he was to take it to the village, and there hand it to Wulf, the latter having gone there on business.

The only dispute upon this point was whether, as claimed by plaintiff, he delivered the contract into Wulf's possession when he met him in Correll, and the latter took it to plaintiff's office, or, as claimed by Wulf, that plaintiff retained possession of it all

of the time, did not deliver it, and that he (Wulf) did not see it, except at the very moment of the assignment. But upon the issues made by the pleadings, involved by the proofs, and submitted to the jury, this is not important. Precisely as was the situation in respect to the receipt, there was no allegation in the answer, and no attempt to prove upon the trial, that this assignment was obtained by fraud or false representations, although there were intimations to this effect, and they have been repeated in the brief of counsel. A few days afterwards plaintiff and Richardson took possession of the two hundred acres of land through a tenant, and the latter has occupied and cultivated it ever since.

About this time plaintiff told Wulf that he would settle with, or pay him up, as soon as the buildings were moved as agreed upon, and was informed that Wulf would not be allowed to move the school building until he paid a balance of forty dollars due thereon to the school district. Wulf and plaintiff then went to the proper officer, and it was there agreed between the three that plaintiff should become responsible for the amount due to the school district, and he subsequently paid the same as agreed upon.

Wulf then moved the buildings, and when moving asked a carpenter in plaintiff's employ, and was told by him to leave them at a certain point on the forty acres. This he did, and soon after he assisted in moving grain that belonged to plaintiff into one of the granaries. Subsequently, when he and Wulf attempted to settle, a dispute arose as to the manner in which the balance due Wulf, after deducting the amount of his indebtedness on account of the land, the amount due to Michel in addition, the amount due plaintiff, the sums he had agreed to pay to the school district and for taxes, was to be paid,—whether all the money, or only that portion over and above two hundred dollars. Plaintiff insisted that Wulf should abide by the terms of the written receipt as to the two hundred dollars, and tendered his note for that amount, with the balance (of about sixty dollars) in cash. Wulf refused to accept the note, claiming that the entire balance was to be paid in cash, and this was the real controversy between the parties at that time and upon the trial.

It is undisputed that plaintiff was abundantly able to pay a note of two hundred dollars, that such a note was perfectly good, that it could have been discounted at ten per cent., and that Wulf went to the bank and was so informed. But he expressly repudiated his agreement after there had been delivered to him, and he had accepted, the evidences of his indebtedness to plaintiff, aggregating more than two hundred dollars, and after the latter had become responsible to the school district for the forty dollars before referred to. Shortly afterwards, Wulf, assisted by the other defendants, moved the school house and the two granaries (in one of which the grain belonging to Woods remained) from the forty acres to the Michel land. He immediately occupied the buildings, and at the time this action was brought and at the time of the trial continued his occupancy, asserting ownership upon the ground that an agreement to sell the land had never been closed between the parties.

This action in conversion was brought to recover damages, the claim being that the forty acres were damaged and diminished in value in the sum of seven hundred fifty dollars by reason of the removal, and that this was the proper measure of damages. No question has been raised as to this being the proper measure, and the damages were assessed at one hundred twenty-five dollars. That was the value of the buildings, as admitted by the answer.

The motion for a new trial was upon the ground that the verdict was not justified by the evidence, and was contrary to law. A majority are of the opinion that upon the issues made by the pleadings, and as the same were tried and submitted by consent of parties, the court below erred when it granted the motion. The theory (see Merchants' Nat. Bank. v. Stanton, 55 Minn. 211, 56 N. W 821) upon which the case was tried and submitted to the jury is made plain by quoting from the charge as follows:

"You are instructed that buildings standing upon a farm are presumed to be a part thereof, and belong to the owner of the soil upon which they stand; and if a person erects or moves buildings upon the land of another with or without the consent or license of the owner of the soil, but without any express under-

standing that such person shall have the right to move the same off from such land, and not under such circumstances from which the right to again remove such buildings from said land may be reasonably implied, then the buildings become a part of the land upon which they were placed, and belong to the owner of the land upon which they stand. Therefore the questions for you to determine are whether or not the buildings in question were originally placed upon the land in question by the defendant with or without an understanding with the plaintiff, express or implied, that the defendant Wulf should have the right to remove the same to the farm to which the defendant did move them; and if you find from the evidence that they were not placed upon the plaintiff's farm with an express understanding, then or thereafter had, between the plaintiff and the defendant Wulf, that the plaintiff should have a right to again remove the same to the farm to which they were moved by the defendant, or they were not moved by the defendant Wulf to plaintiff's farm under circumstances from which the right to remove the same may be fairly implied, then such removal was wrongful, and you must allow the plaintiff such damages as he has suffered by such removal. The question as to the right of the defendants to remove those buildings simmers itself down to this: Was there any understanding, at the time that defendant Wulf moved the buildings on the plaintiff's farm, between the defendant and the plaintiff, that the defendant should have a right to again remove the same from said farm to the adjoining farm, to which the defendants did remove them, as it appears from the evidence, or were they moved under such circumstances from which a right of the defendant to again remove them may be fairly and reasonably implied?"

It is not at all improbable that the case was tried and submitted upon a wrong theory, and that issues might have been made and litigated which would have presented the facts more clearly and fairly. But this was not done. The answer of defendant Wulf simply alleged his ownership of the buildings in addition to a general denial, and his counsel acquiesced in the submission to the jury of the questions covered by that part of the charge above quoted as the essential features of the controversy. They made no requests for anything more, and took no exceptions. Other issues and other questions which might have been raised, tried, and submitted to the jury cannot now be injected into the case for the purpose of sustaining the order appealed from.

We are of the opinion that the evidence was manifestly, palpably, and conclusively in favor of the plaintiff. There was none whatever as to an express agreement that Wulf could remove the buildings after he had placed them on the forty. There was no testimony or circumstances from which such an agreement or understanding could be implied. Wulf voluntarily, and without any reservation, moved them upon the forty in fulfilment of his written contract to sell the two hundred acres and the buildings. Possibly it may be insisted that there was testimony which tended to show a subsequent agreement that, if Wulf would move these buildings onto the forty, the balance due him should be paid in cash. Counsel for defendants suggests no such agreement, nor did Wulf himself refer to it at the trial, unless it can be gathered from his testimony, appearing in the paper book as follows:

"I bought the school house and two granaries, and then he [referring to plaintiff] got to work, and got the contract away from my wife, not that I know he got the contract away. So I was kind of afraid that I get nothing, and so he told me if I will move those buildings onto that forty that belongs to him, what he owns before, then he is going to pay me everything up. So I moved them on there, and I asked him for my money, that I get a home again; and so he put me off from one week to another, and after that once he gave me two hundred dollars in notes—old notes. I had to have the money, so I moved the buildings right over onto my own land, and moved right in there, and been there since that time."

Wulf admitted upon cross-examination that he had no talk with Woods about moving the buildings after the Michel contract was assigned, except that Woods told him that when he moved the buildings he could have his pay; and there is certainly nothing in Wulf's statement that plaintiff "was going to pay me everything up" which would justify this court in abrogating and setting aside the written contract, previously entered into, and substituting a verbal one in lieu thereof, which compelled plaintiff to pay two hundred dollars in cash, instead of giving his note, as had been expressly agreed upon.

Formal contracts in writing should not be wiped out of ex-

84 M.—20

istence by putting a strained construction upon testimony. This is especially true when, as in this case, counsel have not claimed anything of this sort, or when they have taken a position which is at variance with such a claim, as has been done here, for in their brief is the assertion that no contract at all was ever made with reference to the land or buildings. To quote: "The transaction never advanced further than the preliminary stage, viz., an offer, and a statement by him [Wulf] that he would accept if his wife and said Michel were willing."

So far as appears from the present record, Wulf well knew what he was doing when he signed the receipt, received as consideration therefor his note for forty-one dollars previously given for binding twine, assigned the Michel contract, received as part payment for the land evidences of indebtedness held against him by plaintiff aggregating about one hundred seventy-five dollars, requested plaintiff to pay for the school house, and was present when the latter became responsible for that debt. Also when he moved the buildings to the forty, helped to store plaintiff's grain in one of them, and requested plaintiff to pay the delinquent taxes and the fifty dollars due to Michel.

If these various acts do not indicate his complete comprehension of this transaction, and an intent to fulfil on his part, it is difficult to understand what else could be required. He may have made a bad trade, but everything points to his purpose to complete it until he contended that the two hundred dollars should be paid in cash, and then, upon finding that Woods insisted upon abiding by the written contract, he concluded to remove the buildings. In the absence of testimony which would have justified a finding that the buildings were placed temporarily upon the forty acres, or that there was an implied understanding between the parties that they might be removed, a verdict for defendants could not be sustained. It follows that the order appealed from must be reversed.

Counsel urges that, if the verdict be upheld, and plaintiff and Richardson succeed in securing the two hundred acres, they will not only have compensation for the buildings, but will be able to retain them, because Wulf has voluntarily placed the same on

their premises. This does not follow by any means, for, while we do not wish to anticipate questions which may hereafter arise in this unfortunate controversy, it would seem rather remarkable if plaintiff could collect the value of the buildings on the ground that Wulf has converted them to his own use, and then hold them as his own, or as the joint property of himself and Richardson, the latter being a witness in this action, and present at the trial.

Order reversed, and on remittitur judgment will be entered on the verdict.

START, C. J. and LEWIS, J. (dissenting).

We dissent. The only question in this case is, did the trial judge abuse his discretion in granting a new trial? He certainly did not, unless the great preponderance of the evidence is manifestly and palpably in favor of the verdict. We are of the opinion that it is not.

There is no dispute as to the original contract between these parties. The defendant was to assign to the plaintiff his contract for the purchase of the two hundred acre tract, and to move thereon the buildings in question. It was provided in the written agreement that as a part of the purchase price defendant should take plaintiff's note for two hundred dollars, but the provision in reference to the removal of the buildings was entirely oral as to where they were to be placed.

It is true, as suggested in the majority opinion, that the court cannot abrogate the parties' contract, but it is equally true that it was entirely competent for the parties thereto to modify it, if supported by a new consideration. It is apparent that for some reason the plaintiff desired the buildings to be moved upon a forty-acre tract owned by him, rather than upon the two hundred acre tract, purchased from defendant Wulf. It is clear that this change was made by a subsequent agreement, and there was evidence tending to show that the consideration for this change was an agreement on plaintiff's part to pay the two hundred dollars in cash, instead of giving his note.

Let it be granted that the defendant removed the buildings from the forty-acre tract, and placed them upon the two hundred acre tract, because plaintiff refused to pay cash, and let it also

be granted that in placing the buildings ,upon the two hundred acre tract defendant was expecting to repudiate the sale of that land to the plaintiff, his intention was immaterial, for the result was to place the buildings as intended by the original contract. They were placed upon the forty-acre tract not in pursuance of the original contract, but in pursuance of a modification thereof, which was repudiated by the plaintiff. The plaintiff, having had the buildings removed to the tract of land originally agreed upon, has nothing to complain of.

The conclusion reached by a majority of this court logically leads to the singular and unjust result that, because defendant ultimately placed the buildings on the two hundred acre tract, as he had agreed to do, and where they will inure to the benefit of the plaintiff when he secures possession of the tract, he must also pay to the plaintiff the value of the buildings unless he secures possession of the tract.